UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
LUCILLE RODGERS,

                       Plaintiff,                05-CV-6220T

              v.                              **DECISION
and ORDER**

CITY OF ROCHESTER, ROCHESTER POLICE
DEPARTMENT, POLICE OFFICER CRUZ (true first
name unknown), Individually and in his
Official Capacity, POLICE OFFICER FERRO
(true first name unknown), Individually
and in his Official Capacity, ROBERT DUFFY,
Individually and in his Official Capacity as
Chief of Police, POLICE OFFICERS "JOHN DOE
1-10," (last ten names being fictitious,
true names unknown, said persons being police
officers, employees and/or agents of
defendants, involved in the incidents
which are the subject of the Complaint),

                       Defendants.
_____

## INTRODUCTION

Plaintiff Lucille Rodgers ("plaintiff" or "Rodgers") brings this action against the City of Rochester (the "City"), the Rochester Police Department ("RPD"), Police Officer Rene Cruz ("Cruz"), Police Officer Scott Ferro ("Ferro"), Chief of Police Robert Duffy ("Police Chief Duffy"), and Police Officers John Does 1-10 ("John Does"), (collectively "defendants"), alleging that the defendants violated her constitutional rights, and that they were otherwise negligent when they took her into custody on February 5, 2004, due to a mental hygiene arrest. Defendants move for summary judgment against all of plaintiff's claims, alleging that no triable issue of material fact exists and that they are entitled to summary judgment as a matter of law.  Plaintiff opposes the motion arguing that numerous questions of fact exist, which preclude summary

judgment. For the reasons set forth below, defendants' motion for summary judgment is granted in part and denied in part.

## BACKGROUND

On February 5, 2004, plaintiff Lucille Rodgers was living at 51 Almira Street, Rochester, New York. See Ex. A to Michael Cobbs Declaration ("Ex. A") at 6 lines 7-25. She had a tenant named Ronnie Doty ("Doty") who rented space from her home and had lived with her since November 2003. Id. According to plaintiff, when she arrived home on February 5th, she noticed that Doty had stolen some items[1] from her home and as a result she called 911 and requested police assistance. Id. at 14 lines 1-25. Sometime after midnight, police officer Cruz arrived at plaintiff's home. Id. Plaintiff informed Cruz what she thought plaintiff had stolen and Cruz looked around the house and then stepped outside.[2] At that moment, Doty arrived[3] at plaintiff's house and plaintiff demanded that Doty be removed from the premises. Cruz brought Doty outside the house, informed him of plaintiff's allegations and her demand that he be removed from the premises. During this time plaintiff returned to the house to check if anything else had been stolen. When plaintiff completed checking her home, Cruz had released Doty and came back into her house. Cruz verified that Doty was a tenant at the premises because Doty

---

[1]Rodgers claims that Doty stole a chair massager that she had recently bought, two new pairs of shoes and a VCR/DVD combo unit. See Ex. A. at 13 lines 5-25.

[2]Cruz testified that plaintiff did not inform him that Doty had stolen from her. See Ex. C at 25 lines 1-25. However, Cruz admitted that the 911 call made by plaintiff was regarding Doty stealing from her. Id. at 25 lines 23-25 and 26 lines 1-4.

[3]Plaintiff asserts that Doty had two of her new, unopened bottles of Alleve with him, which plaintiff just purchased from Sam's Club. However, Cruz claims that when Doty arrived at plaintiff's residence he was not carrying anything. See Ex. C at 24 lines 2-10.

produced rent receipts to verify his occupancy. See Ex. A at 17 lines 1-23. Plaintiff was advised that she would have to bring an eviction proceeding to remove Doty and that Cruz had no authority to remove Doty from the premises. Id.

Plaintiff acknowledged that Doty did rent from her but she also pointed out that Doty had been stealing from her home and she insisted that she wanted Doty arrested for stealing. Id. However, Cruz refused to arrest Doty. At this time, police officer Ferro arrived at plaintiff's house. Plaintiff stressed that she wanted Doty arrested and alleges that Cruz and Ferro became agitated. Meanwhile, plaintiff was upset because she could not believe that Cruz and Ferro were unwilling to arrest Doty, even though she called 911 to report a larceny.[4] Plaintiff then went to her kitchen, picked up a pan and informed the officers that if Doty was allowed back into her house she would essentially hit him on the head with a pan. See Ex. A at 18 lines 3-25. In response to this statement, Cruz informed her she could not do this and plaintiff states she voluntarily put the pan back on her kitchen table and none of the officers took the pan from her. Id. Cruz claims he told plaintiff to put the pan down and then he grabbed the pan from her. See Ex. C at 42 lines 2-25. After returning the pan to her kitchen, plaintiff continued to debate with the officers regarding their refusal to arrest Doty. According to plaintiff, after approximately ten minutes of arguing, she lifted her hands in the air out of frustration and Cruz grabbed her hands immediately and informed her that she was under arrest. See Ex. A at 2-

---

[4]Plaintiff asserts that Cruz personally observed Doty in possession of stolen property i.e. two bottles of Alleve, which she purchased. Both Cruz and Ferro claim that the whole time they were at plaintiff's house, plaintiff stated she wanted Doty to leave, but never told the officers why she wanted Doty to leave. Ex. B at 43 lines 9-12.

13. However, the officers' version is that after Cruz grabbed the pan from plaintiff, Cruz advised plaintiff that a mental hygiene arrest was being made because of her actions and statements made against Doty. Ferro then handcuffed plaintiff without assistance and walked plaintiff outside. See Ex. B at 30 lines 23-25; 31 lines 2-13.

Contrary to defendants' testimony, plaintiff asserts that Cruz attempted to put her hands behind her back, but was having trouble due to plaintiff's stiff arms.  Plaintiff was 64 years old and suffering from arthritis, which accounted for the stiffness in her arms. However, she was not resisting arrest during the process. See Ex. B at 35 lines 10-13. According to plaintiff, Cruz began forcing plaintiff's hands behind her back in a violent manner and placed the handcuffs in an extremely tight grip. See Ex. A at 23 lines 10-18. When she informed Cruz of the tightness of the handcuffs, she claims he tightened them even further causing her extreme pain. Id. at 25 lines 10-13. After Cruz handcuffed plaintiff, she was escorted to one of the patrol cars. Id. at 24 lines 9-12. Ferro on the other hand asserts that plaintiff never complained that she was in any pain while walking to the police car. During this process, plaintiff asserts that Cruz also stepped on her right foot with his boots, which caused her excruciating pain. Id. at 41 lines 6-20. Plaintiff informed Cruz that he was standing on her foot but he refused to move it and when she tried to pull her foot from under his boot to relieve the pain, Cruz stomped on plaintiff's foot causing her to fall on her knees due to the pain. Id. In the process of trying to put plaintiff into the police car, plaintiff fell once again, sliding to the ground because she was too weak to stand. Id. at 25 lines 14-24.

Plaintiff also claims that Ferro and Cruz caused her to hit her head on the police car, which caused her to faint. Id. at 26 lines 2-5.

Plaintiff alleges that while she was laying on the wet, cold ground she woke up from fainting and felt Cruz grinding his hands against her chest.[5] Plaintiff claims she was congested with phlegm in her throat, which she coughed out involuntarily after Cruz ground his hand into her chest and she woke up. At this point she heard Cruz accuse her of spitting in his face followed by Ferro spraying pepper spray into her eyes and face. According to plaintiff, she could not breath and felt like she was choking so she began shaking, flailing and trying to remove the spray from her eyes, nose and throat. Plaintiff asserts that although the spray was burning and choking her, neither of the officers offered their assistance. Plaintiff claims she was laying in the street for approximately forty-five minutes before an ambulance responded to the scene. See Ex. A at 26 lines 22-25. Plaintiff insists she was sprayed with pepper spray before the ambulance arrived. Id. at 29 lines 18-21. Plaintiff testified that after the ambulance personnel arrived, she was placed on a Gurney and transported to Rochester General Hospital ("RGH").

Defendants argue that after the mental hygiene arrest, Rural Metro (ambulance) was called to respond to the scene. According to defendants, plaintiff was only on the ground for about five minutes before the ambulance arrived. See Ex. B at 55 lines 22-25. Moreover, upon the arrival of the ambulance, plaintiff was leaning against one of the police cars and appeared unresponsive. Charles Cutler ("Cutler"), a Rural Metro

---

[5]Cruz denies that he performed a sternum rub on plaintiff or that he struck plaintiff in the chest. See Ex. C at 11, lines 5-25, at 12, lines 1-2.

employee, performed a sternum rub on plaintiff, but because she did not respond to the sternum rub procedure, she was placed onto a Gurney. During the process of placing plaintiff on a Gurney the handcuffs behind her back were removed. However, defendants asserts that once the handcuffs were removed, plaintiff started swinging, kicking and spitting both at the Rural Metro ambulance personnel and the police officers. Thereafter, pepper spray was applied on plaintiff's face.

According to defendants, no other police officers played any part in the mental hygiene arrest and any officers that did arrive at the scene, did so after plaintiff was already in the ambulance with no further contact with any defendants. A subject resistance report was prepared for the incident verifying that Cruz and Ferro were the only officers involved in the incident. <u>See</u> Ex. I to Igor Shukoff's Declaration. Robert Duffy, as Chief of Police, did not play any role or participate in any way in this incident.

## DISCUSSION

### I.   Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that a party is entitled to summary judgment as a matter of law only where, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . ." F.R.C.P. 56(c) (2003). The party seeking summary judgment bears the burden of demonstrating that no genuine issue of material fact exists, and in making the decision the court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. <u>Ford v. Reynolds</u>, 316 F.3d 351, 354 (2d

Cir.2003) (<u>citing</u> <u>Marvel Characters v. Simon</u>, 310 F.3d 280, 285-86(2d Cir.2002)). "Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." <u>Id.</u>

Plaintiff alleges five causes of action stemming from the events of February 5, 2004: (1) defendants violated plaintiff's rights under the New York State Constitution and under the Fourth and Fourteenth Amendment of the U.S. Constitution pursuant to 42 U.S.C. § 1983 as the result of plaintiff's false arrest and false imprisonment; (2) assault and battery committed by Ferro and Cruz against plaintiff; (3) police brutality and unlawful and excessive use of force by Ferro and Cruz; (4) inadequate training, supervision and discipline provided by the City and Police Chief Duffy to officers Ferro and Cruz; and (5) intentional infliction of emotional distress.

## II.   <u>Excessive Use of Force Claim Against Cruz and Ferro</u>

In her third cause of action, plaintiff alleges that defendants Cruz and Ferro violated 42 U.S.C. § 1983 by using excessive force in effectuating her arrest in violation of her Fourth Amendment right. Defendants respond claiming that the force used in making the arrest was reasonable under the circumstances and that the amount was appropriate given plaintiff's behavior upon removal from her home and again after the arrival of the ambulance. Claims of excessive force by law enforcement officers in the course of an arrest are governed by the Fourth Amendment and analyzed under a "reasonableness" standard. <u>Graham v. Connor</u>, 490 U.S. 386,396 (1989).  "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene,

rather than with the 20/20 vision of hindsight." Terry v. Ohio, 392 U.S. 1, 20-22 (1968). "With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Graham at 396. Furthermore, "our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Terry at 22-27. However, the force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer. See Sullivan v. Gagnier, 225 F.3d 161, 165-166 (2d. Cir. 2000).

Viewing the facts in the light most favorable to plaintiff, there is evidence from which a jury could conclude that officers Cruz and Ferro acted unreasonably in effectuating plaintiff's arrest. As an excessive force claim must be evaluated through the eyes of an officer at the moment of the incident giving rise to the claim, all the circumstances surrounding plaintiff's arrest must be considered. Affording plaintiff the most favorable interpretation of the facts, the officers were faced with a situation that involved an elderly woman who continuously debated with them to arrest her tenant whom she believed stole some of her property and whom both officers admitted did not resist arrest.

First, at the time she was arrested, plaintiff made no threats of violence. While plaintiff went to her kitchen, picked up a pan and informed the officers that if Doty was allowed back into her house she would essentially hit him on the head with a pan - this statement was

made approximately ten minutes earlier. Only after arguing with Cruz and Ferro, during which she lifted her hands in the air out of frustration Cruz then grabbed her hands and informed her that she was under arrest. Even assuming, for purposes of this summary judgment motion, that defendants' version of events is accurate and that after Cruz grabbed the pan from plaintiff, Cruz advised plaintiff that a mental hygiene arrest was being made pursuant to her actions and statements against Doty, plaintiff's conduct, whether it was intentionally harassing raises a substantial question of fact. Ferro testified that he placed plaintiff in handcuffs without assistance and without difficulty and walked plaintiff outside. It is undisputed that plaintiff was not fighting with the officers and that they walked plaintiff outside without incident and she did not resist arrest. However, there is disputed testimony as to whether Cruz intentionally stomped on plaintiff's foot, placed the handcuffs on her too tightly and, threw her into the police car resulting in plaintiff hitting her head and fainting.

Second, it is disputed as to who performed the sternum rub on plaintiff causing her to wake up from her fainting spell. Plaintiff claims Cruz rubbed her chest while defendants claim it was Cutler from Rural Metro ambulance. Plaintiff claims she was congested with phlegm in her throat, which she coughed out involuntarily as the result of Cruz grinding his hand into her chest and she woke up. At this point she heard Cruz accuse her of spitting in his face and then Ferro sprayed pepper spray into her eyes and face. The spray burned and entered her mouth and nose, which affected her breathing. According to plaintiff, because she could not breath and felt like she was choking she then began shaking,

flailing and trying to remove the spray from her eyes, nose and throat. Plaintiff asserts that although the spray was burning and choking her, and causing her distress, neither of the officers offered their assistance. Plaintiff had been laying in the street for approximately forty-five minutes before an ambulance responded to the scene. According to defendants, Cutler performed the sternum rub on plaintiff and because she did not respond to the sternum rub procedure, she was placed onto a Gurney and the handcuffs behind her back were removed. However, defendants assert that once the handcuffs were removed, plaintiff started swinging, kicking and spitting at the Rural Metro personnel and the police officers. Thereafter, pepper spray was applied on plaintiff's face. There were two officers present as well as two employees from Rural Metro when plaintiff, a 64 year old lady,  allegedly began swinging, kicking and spitting[6] and yet none of them could subdue her other than spraying her face with pepper spray, which burned and made it extremely difficult for her to breath and made her choke.

I conclude that taking all of plaintiff's allegations as true, construing all inferences in favor of plaintiff, and considering the circumstances surrounding her arrest, that a reasonable jury could find that the conduct of officers Cruz and Ferro were unreasonable, and thus her Fourth Amendment right was violated and excessive use of force may or may not have been utilized against her. When considering whether a genuine issue of fact exists for purposes of a motion for summary judgment, all inferences and ambiguities must be resolved in favor of the

---

[6]It is significant to note that Cruz testified at his deposition that he did not observe plaintiff actually kick or strike anyone. See Ex. C at 66 line 3-10.

party against whom summary judgment is sought.  See <u>R.B. Ventures, Ltd.</u> <u>v. Shane</u>, 112 F.3d 54 (2d Cir. 1997). After considering the evidence in the light most favorable to the plaintiff, the court finds that no rational jury could find in favor of the defendants on the state of this record, and grant of summary judgment is inappropriate. <u>See</u> <u>Annis v.</u> <u>County of Westchester</u>, 136 F.3d 239 (2d Cir. 1998). Thus, defendants' motion for summary judgment dismissing plaintiff's third cause of action is denied.

### III.  <u>False Arrest and False Imprisonment</u>

Plaintiff alleges that she was falsely arrested and imprisoned when she was subjected to a mental hygiene arrest on February 5, 2004. Count I of plaintiff's Complaint states that plaintiff was "detained ... without cause and her person illegally seized in violation of her rights under the Constitutions of the United States ... and New York State. <u>See</u> Plaintiff's Complaint at ¶ 42. Plaintiff further asserts that as a result of defendants' actions, she was subjected to "loss of liberty and freedom[.]" <u>See</u> <u>id.</u> at ¶ 47. "False imprisonment consists in the unlawful detention of the person of another, for any length of time, whereby he is deprived of his personal liberty." <u>See</u> <u>Kajtazi v. Kajtazi</u>, 488 F.Supp. 15, 18 (E.D.N.Y. 1978).

The elements required to state a claim of false arrest or false imprisonment under New York law are identical. <u>See</u> <u>Jackson v. Police</u> <u>Dept.</u>, 86 A.D.2d 860 (2d Dept. 1982); <u>Blanchfield v. State of N.Y.</u>, 104 Misc. 2d 21, 24 (Ct. of Claims 1980). To state a claim for false imprisonment or false arrest under New York law, a plaintiff must establish that: (1) the defendant intended to confine the plaintiff; (2)

the plaintiff did not consent to the confinement; (3) the plaintiff was aware that he was confined; and (4) the confinement was not otherwise privileged, such as confinement pursuant to a warrant or with probable cause or immunity protection. Curley v. AMR Corp., 153 F.3d 5, 13 (2d Cir. 1998) (false imprisonment claim); (citing Zanghi v. Inc. Village of Old Brookville, 752 F.2d 42, 45 (2d Cir.1985); Bernard v. U.S., 25 F.3d 98, 102 (2d Cir 1994) (false arrest claim).

To state a claim of false arrest, false imprisonment, or the violation of a plaintiff's civil rights resulting from false arrest or false imprisonment, a plaintiff must establish that the arresting officer lacked probable cause to arrest and/or confine the plaintiff. "Probable cause to arrest 'constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or § 1983.'" Mandina v. City of Yonkers, 1998 WL 637471 at *3 (S.D.N.Y. 1998)(citing Weyant, 101 F.3d at 852 (internal citation omitted)). Probable cause to arrest is also a complete defense to a claim of false imprisonment. Zanghi, 752 F.2d at 45.

"Probable cause [to arrest] exists where officers 'have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person arrested has committed or is committing a crime.'" Mandina, 1998 WL 637471 at *3 (quoting Weyant, 101 F.3d at 852). This is an objective standard, and where there are no material issues of fact in dispute, a claim of false arrest or false imprisonment based on any of those actions may properly be disposed of on motion for summary judgment. Parkin v. Cornell Univ., 78 N.Y.2d 523, 529 (1991). Probable cause to

prosecute exists where there are "facts and circumstances [that] would lead a reasonably prudent person in like circumstances to believe [that the criminal defendant is] guilty." Colon v. City of New York, 60 N.Y.2d 78, 82 (1983)(citations omitted).

Here, questions of fact exist as to plaintiff's false arrest and false imprisonment claims. It is disputed as to whether plaintiff was dragged out of her home by Cruz and Ferro against her will. Moreover, there are questions of fact regarding the circumstances leading up to the plaintiff being  pepper sprayed and strapped to a Gurney against her will. Further, assuming the facts in the light most favorable to the plaintiff, arguably defendants lacked probable cause to arrest plaintiff since defendants have not put forth any evidence to suggest that Cruz and Ferro had probable cause to believe that plaintiff committed a crime or a violation of a statute under New York law. Therefore, defendants' motion for summary judgment is denied as to plaintiff's first cause of action for false arrest and imprisonment.

## IV.   **Qualified Immunity**

Defendants are entitled to qualified immunity if either: (a) it was objectively reasonable for them to believe that probable cause existed; or (b) officers of reasonable competence could disagree on whether the probable cause test was met. See Lennon v. Miller, 666 F.3d 416, 423 (2d Cir. 1995); Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991) (If it was objectively reasonable for the officer to believe that his conduct did not violate a constitutional right, then he is entitled to the protection of the qualified immunity defense).

Qualified immunity for police officers is available on a motion for summary judgment if it appears, from undisputed facts, that an officer's conduct did not violate constitutional rights that were clearly established at the time of his or her actions, or that it was objectively reasonable for him or her to believe that his or her actions did not violate such rights. See Anderson v. Creighton, 483 U.S. 635, 638-40 (1987); Malley v. Briggs, 475 U.S. 335, 345 (1986) (To penetrate the shield of qualified immunity, the arrest must be "so lacking in indicia of probable cause" as to render the officers' belief in its existence unreasonable); Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982); see also Fodelmesi v. Schepperly, 1992 WL 84469 at * 1 (S.D.N.Y. 1992).

Summary judgment is available if defendants present sufficient undisputed facts such that, even looking at the evidence in the light most favorable to plaintiff and drawing all inferences favorable to plaintiff, no reasonable jury could conclude that it was objectively unreasonable for defendants to believe that they were acting in a fashion that did not violate an established federally protected right. See Kaminsky v. Rosenblum, 929 F.2d 922 (2d Cir. 1991). Here, there are material facts in dispute regarding the nature, severity and amount of force used against plaintiff by Cruz and Ferro, the reasonableness of the force used and whether the force was legally justified as well as whether probable cause existed to justify arresting plaintiff. Accordingly, in light of the existence of disputed facts, summary judgment on the issue of qualified immunity is denied.

## V.    <u>Inadequate Training, Supervision And Discipline Claims</u>

In plaintiff's fourth cause of action she claims that the City and Police Chief Duffy violated § 1983 by violating her civil and constitutional rights as a result of the negligent hiring of Cruz and the inadequate training, supervision and discipline of both Cruz and Ferro. <u>See</u> Complaint at ¶¶ 52-56. Specifically, in support of her claim plaintiff points to the fact that Cruz admitted at deposition that he has had two or three citizen complaints brought against him, prior to plaintiff's complaint, at least one involving excessive use of force.[7]

A claim of inadequate training will trigger municipal liability under § 1983 only where "the failure to train amounts to deliberate indifference to the rights" of those with whom municipal employees will come into contact. <u>See</u> <u>City of Canton, Ohio v. Harris</u> 489 U.S. 378, 388 (1989). The Supreme Court explains that "deliberate indifference" requires that  municipal policymakers made a "deliberate choice ... from among various alternatives" not to fully train employees. <u>Id.</u> at 389. "Such a deliberate choice could be shown where in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." <u>Walker v. City of New York</u>, 974 F.2d 293, 297 (2d Cir.1992).

Here, plaintiff offers no support for her claim that the City and Police Chief Duffy improperly hired, trained and supervised Cruz and

---

[7]Plaintiff's assert that they have requested Cruz's disciplinary file but defendants to date have refused to provide such information.

Ferro as well as other employees. See Complaint, ¶¶ 52-56. Further, plaintiff offers only bare assertions to support her claim that the City and Police Chief Duffy were negligent in allowing Cruz to continue his employment. Moreover, plaintiff offers no evidence from which a jury may infer that the City or Police Chief Duffy acted with deliberate indifference to a need for more or different training of its police officers. Since, plaintiff has failed to address this point in her opposition to defendants' motion for summary judgment she therefore, has abandoned her claim for inadequate training, supervision and discipline. See Curto v. Bender, 2005 WL 724156 *16 (W.D.N.Y. 2005) (noting that plaintiff failed to address, and thus presumably conceded, a point raised by defendant's motion to dismiss); Barmore v. Aidala, 419 F.Supp.2d 193, 201-02 (N.D.N.Y. 2005) (Failure to oppose motion to dismiss a claim is deemed abandonment of claim). Accordingly, plaintiff's fourth cause of action is dismissed.

## VI.   Intentional Infliction of Emotional Distress

Defendants correctly argue in their moving papers that plaintiff's claim of intentional infliction of emotional distress must be dismissed as a matter of law. It is well-established that public policy bars bringing the tort of intentional infliction of emotional distress against a government entity. See Rivera v. City of New York, 392 F.Supp.2d 644, 657 (S.D.N.Y.2005) (dismissing intentional infliction of emotional distress claim); Richards v. City of New York, 2007 WL 1030294 at *10 (E.D.N.Y. 2007); see also Lauer v. City of New York, 240 A.D.2d 543 (2d Dept. 1997); Wheeler v. State of New York, 479 N.Y.S.2d 244 (2d Dept. 1984). In this case, the City is clearly a government entity and

therefore, plaintiff's intentional infliction of emotional distress claim against the City should be dismissed on this ground.

In order to establish a cause of action for intentional infliction of emotional distress, plaintiff must prove four (4) elements: (1) that defendant engaged in extreme and outrageous conduct; (2) that defendant did so intentionally; (3) that defendant's conduct caused the distress; and (4) that plaintiff suffered severe emotional distress. See Christenson v. Gutman, 249 A.D.2d 805 (3d Dept. 1998). The conduct in question must "be regarded as atrocious and utterly intolerable in a civilized society." See Klinge v. Ithaca College, 235 A.D.2d 724, 727 (3d Dept. 1997). The conduct must be "so severe that no reasonable man could be expected to endure it." See R2d of Torts, § 46, comment j; see also Richard L. v. Armon, 144 A.D.2d 1, 3 (2d Dept. 1989).

In this case, plaintiff alleged that defendants used excessive force on her regarding defendants' treatment of her during the night of February 5, 2004. However, even assuming plaintiff's allegations as true, Cruz and Ferro's conduct do not constitute extreme and outrageous conduct sufficient to satisfy an intentional infliction of emotional distress claim. See Howell v. New York Post Co., 81 N.Y.2d 115, 121 (1993) (The offensive conduct with which defendant is charged must be "extreme and outrageous"). Further, while the alleged conduct may have exceeded the bounds of decency, plaintiff's failure in this case to submit medical evidence or her lack of need to seek medical attention specifically relating to her emotional distress relating to events that occurred on the night of February 5, 2004, results in conclusory or speculative allegations that are properly dismissed on summary judgment. See

Page -17-

Christenson, 249 A.D.2d at 808; Glendora v. Walsh, 227 A.D.2d 377, 378
(2d Dept. 1996). Accordingly, the fifth count of the complaint is
dismissed.

### VII.  Claims Against Police Chief Duffy and Police Officers "John Doe 1-10" Is Dismissed

Defendants contend that the allegations in the complaint fail to
show Police Chief Duffy's personal involvement in the alleged
constitutional violations. Defendants also argue that there are no facts
in dispute that indicate that there were any other officers directly or
personally responsible for the allegedly unlawful conduct. A plaintiff
asserting a § 1983 claim against a supervisory official in his individual
capacity must show that the supervisor was personally involved in the
alleged constitutional deprivation. See Johnson v. Newburgh Enlarged Sch.
Dist., 239 F.3d 246 (2d Cir. 2001); Gaston v. Coughlin, 249 F.3d 156, 164
(2d Cir.2001). Personal involvement may be shown by evidence that: (1)
the defendant participated directly in the alleged constitutional
violation; (2) the defendant, after being informed of the violation
through a report or appeal, failed to remedy the wrong; (3) the defendant
created a policy or custom under which unconstitutional practices
occurred, or allowed the continuance of such a policy or custom; (4) the
defendant was grossly negligent in supervising subordinates who committed
the wrongful acts; or (5) the defendant exhibited deliberate indifference
to others' rights by failing to act on information indicating that
unconstitutional acts were occurring. See Colon v. Coughlin, 58 F.3d 865,
873 (2d Cir.1995); Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir.1986).
A "plaintiff cannot base liability solely on [the defendant]'s
supervisory capacity or the fact that he held the highest position of

authority" within the relevant governmental agency or department. <u>See</u>
<u>Burgess v. Morse</u>, 259 F.Supp.2d 240, 248 (W.D.N.Y.2003).

Here, the only allegation made against Police Chief Duffy is in
paragraph 4 of the Complaint where plaintiff alleges that Robert Duffy
was at "all times mentioned herein the Chief of Police of the Rochester
Police Department." <u>See</u> Complaint, ¶ 4. Other than this allegation, there
is no factual basis established to demonstrate Police Chief Duffy's
personal involvement in the events that occurred on February 5, 2004.
Moreover, the subject resistance report prepared for the incident
verified that Cruz and Ferro were the only officers involved. <u>See</u> Ex. I.
No other police officers played any part in the mental hygiene arrest or
had any contact with the plaintiff. Accordingly, the complaint fails to
allege personal involvement by Police Chief Duffy or any other police
officers, except Cruz and Ferro in the alleged deprivations, and
therefore plaintiff's § 1983 claims against Police Chief Duffy and police
officers "John Doe 1-10" is dismissed.

### VIII.   <u>Punitive Damages Claim</u>

Defendants ask this court that the City be afforded immunity from
punitive damages under § 1983.[8] This Court agrees. <u>See</u> <u>City of Newport v.</u>
<u>Fact Concerts, Inc.</u>, 453 U.S. 247 (1981) (Court concluded that nothing
in § 1983's legislative history suggested that Congress wanted to disturb
the traditional immunity from punitive damages that municipalities had
previously enjoyed); <u>see</u> <u>also</u> <u>Brady v. Port Auth. of NY and NJ</u>, 1998 WL
724061 *at 1 (E.D.N.Y. 1998); <u>Shifa Serv., Inc. v. Port Auth. of NY and</u>

---

[8]The City does not contest that it acts under color of state law and therefore can be held liable under § 1983
so long as the requirements of <u>Monell v. Dept. of Soc. Serv.</u>, 436 U.S. 658 (1978) are met.

NJ, 1997 WL 563301 *at 5 (S.D.N.Y. 1997). Moreover, plaintiff once again does not address this point in her opposition to defendants' motion for summary judgment and thus has abandoned this claim. See Curto, 2005 WL 724156 at *16; Barmore, 419 F.Supp.2d at 201-02. Accordingly, defendants are entitled to summary judgment as a matter of law and plaintiff's punitive damages claim against the City is dismissed.

## CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is granted as to Counts IV and V of the Complaint, and those claims are dismissed with prejudice. Defendants' motion for summary judgment is denied as to Counts I, II and III of the Complaint, and those claims remain pending. Plaintiff's § 1983 claims against Police Chief Duffy and police officers "John Doe 1-10" is dismissed with prejudice. Plaintiff's punitive damages claim against the City is dismissed with prejudice. For purposes of clarity, Counts I (false arrest and false imprisonment), II (assault and battery) and Count III (excessive force) remain pending against remaining defendants.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca

MICHAEL A. TELESCA
United States District Judge

Dated:     Rochester, New York
           May 29, 2007